UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                  )
IN RE PETITION OF STANLEY                         )
KUTLER, et al.                                    )        Misc. No. 10-547 (RCL)
                                                  )
_____)

**MEMORANDUM OPINION & ORDER**

Before the Court is petitioners' Petition for Order Directing Release of Transcript of Richard M. Nixon's Grand Jury Testimony of June 23–24, 1975, and Associated Materials of the Watergate Special Prosecution Force [1]. Upon consideration of the petition, the government's opposition [16] and reply thereto [19], the government's *ex parte* submission to the Court [21], and the applicable law, the Court will grant the petition for the reasons set forth below.

**I.     BACKGROUND**

Stanley Kutler,[1] the American Historical Association, the American Society for Legal History, the Organization of American Historians, and the Society of American Archivists have petitioned the Court to unseal the transcript of President Richard M. Nixon's grand jury testimony from June 23 and 24, 1975. Kutler Petition 1, Sept. 13, 2010 [1]. Petitioners also seek associated materials of the Watergate Special Prosecution Force (WSPF), which are located at the National Archives and Records Administration (NARA) in boxes five, six, and seven of Record Group 460. *Id.* at 1–2. Petitioners have submitted the declarations of several scholars and other individuals who support their request. *See id.* at 4, ¶¶ 8–9 (listing the names and titles of declarants).

---

[1] Mr. Kutler is an historian, Professor Emeritus at the University of Wisconsin, and the author of several books about President Nixon and Watergate. Kutler Petition 2, ¶ 1 [1].

1

The government opposes the petition, arguing that the requested disclosure falls outside the exceptions to grand jury secrecy set forth in Federal Rule of Criminal Procedure 6(e). Petitioners base their request not on Rule 6(e), but on the Court's inherent supervisory authority to order the release of grand jury materials. Specifically, petitioners ask the Court to apply the "special circumstances" test articulated by the Second Circuit in *In re Petition of Craig*, 131 F.3d 99 (2d Cir. 1997).

The key events of Watergate—the details of which Mr. Kutler describes thoroughly in his declaration at Tab A—are well known. The content of President Nixon's grand jury testimony, however, is unknown to the public. Following his resignation and President Gerald Ford's pardon, the WSPF could not prosecute President Nixon for conduct related to the Watergate break-in and subsequent cover-up. The last of the three WSPF grand juries, however, remained open with respect to investigations of other potential targets. Declaration of Richard J. Davis (Tab C) ¶ 3 [1]. The WSPF secured an agreement to take President Nixon's testimony in connection with its open investigations and in a manner that would avoid litigation over such issues as executive privilege. *Id.* at ¶¶ 3–4. Prosecutors agreed to take his testimony near his home in San Clemente, California. Declaration of Julian Helisek (Tab B) ¶ 7 [1]. On June 23 and 24, 1975, President Nixon testified for eleven hours before two members of the grand jury and several WSPF attorneys. *Id.* Afterward, a full transcript of the proceeding was read to the remaining members of the grand jury in Washington, DC. *Id.* at ¶ 9.

Because the content of the testimony was sealed, the press reported primarily on the fact of it—in keeping with President Nixon's desire that the fact of his testimony be made public. *Id.* at ¶ 10. Press accounts indicate that the testimony covered at least four topics: (1) the 18½-minute gap in a White House tape recording of a conversation between President Nixon and H.R.

Haldeman; (2) the alteration of White House tape transcripts submitted to the House Judiciary Committee during its impeachment inquiry; (3) the extent to which the Nixon Administration used the IRS to harass political enemies; and (4) the $100,000 payment from billionaire Howard Hughes to President Nixon's friend, Charles "Bebe" Rebozo. *Id.* at ¶ 11. A few pieces of information about the testimony's content have been reported—including, for example, President Nixon's statement in a 1977 interview that he did not erase the infamous 18½-minute segment—but little else is known to the public. *Id.* at ¶ 13.

On July 3, 1975, the third Watergate grand jury was dismissed. *Id.* at ¶ 29. It had handed up no indictments in the wake of President Nixon's testimony. *Id.* at ¶ 12.

## II. <u>LEGAL STANDARD</u>

There is a tradition in the United States—one that is "older than our Nation itself"—that proceedings before a grand jury should remain secret. *In re Biaggi*, 478 F.2d 489, 491 (2d Cir. 1973) (quoting *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959)). This tradition is codified in Federal Rule of Criminal Procedure 6(e). *See Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218–19 n.9 (1979). The rule of secrecy is justified by a number of objectives, including:

> (1) [t]o prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; [and] (5) to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681–82 n.6 (1958) (quoting *United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir. 1954)).

But the rule of grand jury secrecy is not without exceptions. These exceptions, which "have developed historically alongside the secrecy tradition," are codified in Rule 6(e)(3). *In re Petition of Craig*, 131 F.3d 99, 102 (2d Cir. 1997). Additionally, courts have recognized that—in the absence of an exception under Rule 6(e)(3)—there may be "special circumstances in which release of grand jury records is appropriate even outside the boundaries of the rule." *Id.* (quoting *Biaggi*, 478 F.2d at 494 (supplemental opinion) (internal quotations omitted) (holding that Rule 6(e) did not bar the public disclosure of grand jury minutes, even where no Rule 6(e) exception applied, when sought by the grand jury witness himself)). In *Craig*, the Second Circuit embraced the "special circumstances" exception first recognized by Chief Judge Friendly in *Biaggi*, holding that "permitting departures from Rule 6(e) is fully consonant with the role of the supervising court and will not unravel the foundations of secrecy upon which the grand jury is premised." *Id.* at 103. The *Craig* court explained that the special circumstances exception "is consistent with the origins of Rule 6(e), which reflects rather than creates the relationship between federal courts and grand juries." *Id.* (citing *Pittsburgh Plate Glass Co.*, 360 U.S. at 399 (explaining that "Rule 6(e) is but declaratory" of the principle that the disclosure of grand jury materials is "committed to the discretion of the trial judge")). Judge Calabresi, writing for the court, noted that the Second Circuit was not alone in this view. *See id.* at 103 & nn.3–4 (citing *In re Hastings*, 735 F.2d 1261, 1268–69 (11th Cir. 1984) (describing courts' "inherent power" to authorize the disclosure of grand jury records outside of Rule 6(e))).

Indeed, there is ample support for the view that courts' authority regarding grand jury records reaches beyond Rule 6(e)'s literal wording. As the Advisory Committee stated in

adopting the rule, Rule 6(e) "continues the traditional practice of secrecy on the part of members of the grand jury, *except when the court permits a disclosure*." Fed. R. Crim. P. 6(e) advisory committee's note (emphasis added). And several years after the rule was promulgated, the Supreme Court stated that "federal trial courts as well as the Courts of Appeals have been nearly unanimous in regarding disclosure as *committed to the discretion of the trial judge*. Our cases announce the same principle, and *Rule 6(e) is but declaratory* of it." *Pittsburgh Plate Glass Co.*, 360 U.S. at 399 (emphasis added) (internal citations omitted). Consistent with this principle, it has been the initiative of courts—through the exercise of their inherent authority regarding grand jury records—that has shaped the development of Rule 6(e). Since its adoption by the Supreme Court in 1944, the rule has been amended to reflect "subsequent developments wrought in decisions of the federal courts." *Hastings*, 735 F.2d at 1268. These amendments confirm that courts' ability to order the disclosure of grand jury records has never been confined by Rule 6(e)'s enumerated exceptions.

In 1971, for example, a district court went beyond the language of Rule 6(e)—which at that time permitted disclosure of grand jury records only to "attorneys for the government"—and permitted disclosure to IRS agents in connection with a Department of Justice investigation. *In re William H. Pflaumer & Sons, Inc.*, 53 F.R.D. 464, 476–77 (E.D. Pa. 1971). Subsequently, in 1977, Rule 6(e) was amended to allow disclosure to government personnel deemed necessary to assist government attorneys in the performance of their duties. *See* Fed. R. Crim. P. 6(e)(3)(A)(ii). The Advisory Committee cited *Pflaumer*, among other cases, noting that "[a]lthough case law is limited, the trend seems to be in the direction of allowing disclosure to government personnel who assist attorneys for the government in situations where their expertise is required." Fed. R. Crim. P. 6(e) advisory committee's note. In 1983, Rule 6(e) was once again

5

amended to incorporate a development in the law by the courts. The Advisory Committee explained that "[n]ew subdivision (e)(3)(C)(iii) recognizes that it is permissible for the attorney for the government to make disclosure of matters occurring before one grand jury to another federal grand jury. *Even absent a specific provision to that effect, the courts have permitted such disclosure in some circumstances.*" *Id.* (collecting cases) (emphasis added).

As its history demonstrates, Rule 6(e) was not designed to ossify the exceptions to the general rule of grand jury secrecy—freezing the scope of such exceptions at the moment the rule was promulgated—but instead was intended to declare the law of disclosure as it stood in 1944. And as new exceptions outside of those enumerated in Rule 6(e) have gained traction among the courts, the scope of the rule has followed suit—a practice in keeping with courts' traditional discretion regarding disclosure, *see Pittsburgh Plate Glass Co.*, 360 U.S. at 399, and utterly inconsistent with the notion that Rule 6(e) limits courts' ability to disclose grand jury records to those exceptions expressly contemplated by the rule. *See Hastings*, 735 F.2d at 1269 (explaining that Rule 6(e)'s history "indicate[s] that the exceptions permitting disclosure were not intended to ossify the law, but rather are subject to development by the courts in conformance with the rule's general rule of secrecy"); *In re Petition of Am. Historical Ass'n*, 49 F. Supp. 2d 274, 283 (S.D.N.Y. 1999) ("These exceptions [to Rule 6(e)] gradually have been adopted to reflect traditional practices of courts and evolving views as to the desirability of disclosure in certain circumstances.").

While "it is certain that a court's power to order disclosure of grand jury records is not strictly confined to the instances spelled out in the rule," there is little guidance as to when a court is free to go beyond Rule 6(e). *Hastings*, 735 F.2d at 1268. To be sure, a court's authority

to order the disclosure of grand jury records is not unfettered. In recognizing that Rule 6(e)'s exceptions "are subject to development by the courts," the *Hastings* court observed that:

> Certainly . . . courts must adhere to Rule 6(e) in "garden variety" petitions for grand jury disclosure. The rule was intended to provide a reliable statement of the law in this area, and would be rendered meaningless if departures were freely sanctioned. *We assume that courts are not empowered to act outside Rule 6(e) in other than exceptional circumstances consonant with the rule's policy and spirit.*

*Hastings*, 735 F.2d at 1269 (emphasis added) (finding that a judicial investigative committee's request for the records of a grand jury that had indicted a federal judge constituted an "exceptional situation" permitting disclosure outside of Rule 6(e)). This Court agrees that any exception to grand jury secrecy beyond those enumerated in Rule 6(e) must arise—to put it simply—only in exceptional circumstances.

Contrary to the government's contention, the special circumstances exception first recognized in *Biaggi* does not circumvent Rule 6(e). The Supreme Court has admonished that courts' inherent supervisory power "does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure." *Carlisle v. United States*, 517 U.S. 416, 426 (1996) (holding that a district court had no authority to grant a motion for judgment of acquittal filed one day outside of Rule 29(c)'s time limit); *see also Bank of Nova Scotia v. United States*, 487 U.S. 250, 254–55 (1988) (holding that a district court could not invoke its supervisory power to circumvent Rule 52(a)'s harmless error standard). But *Carlisle* dealt with a district court that had "contradicted the plain language" of Rule 29(c) by "effectively annull[ing]" its specified time limit. *Carlisle*, 517 U.S. at 426. In contrast, courts have historically exercised their supervisory power to develop appropriate exceptions to the rule of grand jury secrecy. *See Hastings*, 735 F.2d at 1268–69 (tracing the history of how courts'

7

inherent power has shaped Rule 6(e)); *In re Report and Recommendations of June 5, 1972 Grand Jury*, 370 F. Supp. 1219, 1229 (D.D.C. 1974) (citing *Biaggi* for the proposition that Rule 6(e) "remains subject to the law or traditional policies that gave it birth"). Nothing in *Carlisle* precludes the exercise of that power in "exceptional circumstances consonant with the rule's policy and spirit." *Hastings*, 735 F.2d at 1269.

The D.C. Circuit has not specifically addressed the question of whether courts have inherent authority to order the release of grand jury records in circumstances not enumerated by Rule 6(e). It has, however, permitted disclosure in circumstances in which no Rule 6(e) exception applied. *See In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154–55 (D.C. Cir. 2007) (releasing grand jury material because it had become widely known, thereby losing its character as Rule 6(e) information); *Haldeman v. Sirica*, 501 F.2d 714, 715 (D.C. Cir. 1974) (en banc) (denying a petition to prohibit the release of a grand jury report outside of Rule 6(e)). *Haldeman* was a direct appeal from Judge Sirica's decision in *In re Report and Recommendations* to release a report prepared by the first Watergate grand jury to the House Judiciary Committee. In his decision, Judge Sirica rejected the argument that disclosure was "absolutely prohibited" because it fell outside of Rule 6(e). *In re Report and Recommendations*, 370 F. Supp. at 1227. In so doing, he cited Chief Judge Friendly's opinion in *Biaggi* for the proposition that Rule 6(e) "was not intended to create new law [but] remains subject to the law or traditional policies that gave it birth." *Id.* at 1229. Judge Sirica thus held that the principles of grand jury secrecy did not prohibit disclosure of the grand jury's report to the House Judiciary Committee. The D.C. Circuit approved of Judge Sirica's decision, stating that it was "in general agreement" with his rejection of the contention that "the discretion ordinarily reposed in a trial court to make such disclosure" of grand jury materials is limited by the terms of Rule 6(e).

8

*Haldeman*, 501 F.2d at 715. Notably, in approving of Judge Sirica's decision, the D.C. Circuit effectively *declined* to adopt the view of the dissenting judge in *Biaggi*, who argued that "the present situation does not present a case for the application of any of the exceptions specified in [Rule 6(e)]. [The Court has], without the support of any authority in the statute or the case law, created another exception. . . . I do not believe that we have power to legislate this additional exception." *Biaggi*, 478 F.2d at 494 (Hays, J., dissenting).

Given the dearth of relevant law in our Circuit and the absence of any precedent precluding petitioners' request,[2] it is appropriate to look to the way other Circuits have dealt with the disclosure of grand jury materials outside of Rule 6(e). For the reasons discussed above, the Court finds that the Second Circuit's special circumstances exception is well grounded in courts' inherent supervisory authority to order the release of grand jury materials. Importantly, the exception, by its very nature, applies only in exceptional circumstances, requiring a nuanced and fact-intensive assessment of whether disclosure is justified. *Craig* provided a non-exhaustive list of factors that a court may consider when making such an assessment. These factors include:

> (i) the identity of the party seeking disclosure; (ii) whether the defendant to the grand jury proceeding or the government opposes the disclosure; (iii) why disclosure is being sought in the particular case; (iv) what specific information is being sought for disclosure; (v) how long ago the grand jury proceedings took place; (vi) the current status of the principals of the grand jury proceedings and that of their families; (vii) the extent to which the desired material—either permissibly or impermissibly—has been previously made public; (viii) whether witnesses to the grand jury proceedings who might be affected by disclosure are still alive; and (ix)

---

[2] The government points to *In re Petition of Newman*, No. 87-5345 (D.C. Cir. Apr. 20, 1988), in which the D.C. Circuit affirmed the denial of a petition to unseal grand jury transcripts because "a claim of historical importance, without more, falls outside the scope of the Rule 6(e)(3) exceptions permitting disclosure." *Id.* at *3a. But *Newman* was an unpublished opinion, and thus lacks precedential value here.

9

the additional need for maintaining secrecy in the particular case in question.

*Craig*, 131 F.3d at 106. With regard to the third factor—the reason disclosure is sought—the *Craig* court held that nothing "prohibits historical interest, on its own, from justifying the release of grand jury material in an appropriate case." *Id.* at 105. Indeed, it is "entirely conceivable that in some situations historical or public interest alone could justify the release of grand jury information." *Id.*

### III. <u>MERITS OF THE PETITION</u>

The factors enumerated above properly balance any special circumstances justifying disclosure against the need to maintain grand jury secrecy. Accordingly, the Court will consider those factors in determining whether petitioners have demonstrated that the disclosure of President Nixon's grand jury testimony is justified. The government argues that—even if the Court applies the special circumstances test—petitioners fail to meet that test in light of the privacy interests of individuals named in the testimony and the age of the requested records. Petitioners contend that the need to maintain the secrecy of the records is minimal and that it is outweighed by special circumstances—namely, historical interest in the records—justifying disclosure.

The Court finds that the factors enumerated above favor the unsealing of the requested records. First, the identity of the parties seeking disclosure—including major historical groups and several leading Nixon and Watergate scholars—weighs in petitioners' favor. Second, petitioners seek only a narrow range of records related to a single grand jury witness. Third, the government's opposition to disclosure, based primarily on privacy implications and the age of the records, lacks weight in light of the Court's discussion of those factors below. *See Craig*, 131

F.3d at 106 ("[The government's] position is not dispositive. Government support cannot 'confer' disclosure, nor can government opposition preclude it.").

In addition to these factors, the reason disclosure is sought is particularly significant here. There is no question that the requested records are of great historical importance, and indeed, the government does not contest that fact. Petitioners focus on both the general historical importance of the Watergate criminal investigations and the specific historical importance of President Nixon's testimony. To be sure, Watergate's significance in American history cannot be overstated. Nearly forty years later, Watergate continues to capture both scholarly and public interest. The disclosure of President Nixon's grand jury testimony would likely enhance the existing historical record, foster further scholarly discussion, and improve the public's understanding of a significant historical event. *See, e.g.*, *In re Tabac*, No. 3:08-mc-0243, 2009 WL 5213717, at *2 (M.D. Tenn. Apr. 14, 2009) (finding that the *Craig* factors, specifically historical importance, weighed in favor of unsealing grand jury testimony relating to James Hoffa); *In re Petition of Nat'l Sec. Archive*, No. 08-civ-6599, Summary Order at 1–2 (S.D.N.Y. Aug. 26, 2008) (finding that "substantial historical importance" justified the disclosure of grand jury records relating to Julius and Ethel Rosenberg, Abraham Brothman, and Miriam Moskowitz); *Am. Historical Ass'n*, 49 F. Supp. 2d at 297 (finding that historical interest and other relevant *Craig* factors outweighed the need to maintain the secrecy of grand jury transcripts relating to Alger Hiss); *In re Petition of Gary May*, No. M 11-189, Memorandum & Order at 3–4 (S.D.N.Y. Jan. 20, 1987) (finding that "undisputed historical significance" justified the disclosure of grand jury minutes relating to William Remington, a prominent public official accused of being a Communist during the McCarthy era).

11

The remaining *Craig* factors, which pertain to the need to maintain the secrecy of the requested records, do not overcome the interests favoring disclosure. As an initial matter, the Court notes that the traditional objectives of grand jury secrecy are not implicated here. *See Proctor & Gamble*, 356 U.S. at 681–82 n.6 (enumerating such objectives as preventing the escape of individuals who may be indicted, ensuring the freedom of grand jury deliberations, and protecting the innocent accused). Thirty-six years have elapsed, the sole testifying witness passed away in 1994, and the WSPF's investigations have closed. Nevertheless, important secrecy interests may remain years after a grand jury proceeding has ended. These include (1) a forward-looking interest in maintaining secrecy to encourage future grand jury witnesses to testify without fear of subsequent disclosures, and (2) an interest in protecting the privacy of any subjects of the investigation whose identities have not been revealed. *Am. Historical Ass'n*, 49 F. Supp. 2d at 292. As to the first interest, the Court does not believe that disclosing thirty-six-year-old records for historical purposes will deter future witnesses from providing grand jury testimony. *See id.* ("The inhibiting effect of such disclosure is insignificant, especially when compared with far more immediate potential causes of disclosure, such as leaks, general press attention, public statements by witnesses and revelations at trial.").

Thus, the only relevant secrecy interest here—and the government's primary reason for opposing petitioners' request—is the interest in protecting the privacy of named individuals and their families.[3] Turning to the remaining factors, the Court finds that the privacy interests at stake here are minimal. As noted above, President Nixon, the sole testifying witness, passed away seventeen years ago. Furthermore, many Watergate principals who are likely mentioned in

---

[3] The government has provided an *ex parte* submission [21] indicating the current status of individuals named in President Nixon's testimony. The Court has reviewed the submission *in camera* and takes its contents into account in this analysis.

his testimony are deceased. *See* Kutler Petition 38–39 [1]. Most surviving principals,[4] as well as less significant Watergate figures, have either written about Watergate, given interviews, or testified under oath about their involvement. *See id.* at 22–23 n.6, 26 nn.7–8, 39 & n.16. Many of these individuals are among those who testified before the Senate Watergate Committee or at one of the four Watergate criminal trials—the transcripts of which are public. *Id.* at 39; Reply 14–15 [19]. Additionally, portions of the grand jury testimony of certain Watergate figures have been made public. Declaration of Julian Helisek (Tab B) ¶ 30 [1]. Given the extent to which Watergate figures—both indicted and unindicted—have written, spoken, or testified about Watergate, privacy concerns are of limited significance here.

Moreover, NARA's review procedures allay any remaining privacy concerns. The government has informed the Court that, in the event that the requested records are unsealed, NARA would review the testimony and its associated materials for privacy concerns. With respect to named individuals who are still living, NARA would look to the treatment of those individuals in previously released Watergate-related records. NARA would also consider such factors as the passage of time and the notoriety of those individuals in connection with the events being discussed. These review procedures, to the extent that privacy concerns exist, greatly diminish any interest in maintaining the secrecy of the requested records.[5]

In light of the above discussion, the Court rejects the government's argument that thirty-six-year-old records are too "young" for disclosure. The government points to courts that have

---

[4] John Dean, a surviving principal who pled guilty to conspiracy to obstruct justice in connection with his role in the Watergate cover-up, has submitted a declaration in support of the petition. *See* Declaration of John W. Dean III (Tab D) [1].

[5] Additionally, to the extent that any portions of President Nixon's testimony have been redacted as classified, such portions would not be made public without undergoing declassification review.

authorized disclosure on the basis of historical interest fifty to sixty years after the relevant grand jury proceedings. *See, e.g.*, *In re Petition of Nat'l Sec. Archive*, No. 08-civ-6599, Summary Order at 1–2 (granting a petition to unseal sixty-year-old grand jury records relating to Julius and Ethel Rosenberg, Abraham Brothman, and Miriam Moskowitz); *Am. Historical Ass'n*, 49 F. Supp. 2d at 297 (granting a petition to unseal fifty-year-old grand jury transcripts relating to Alger Hiss). The Court notes that at least one other district court has released grand jury material of a comparable age on the basis of historical interest. *See In re Petition of May*, No. M 11-189, Memorandum & Order at 3–4 (granting a petition to unseal thirty-five-year-old grand jury minutes relating to William Remington). But more importantly, the significance of age in this analysis turns on other relevant factors—for example, the current status of the principals of the grand jury proceedings. Indeed, the government's argument focuses on whether sufficient time has passed to protect the privacy of named individuals and their families. As the discussion above demonstrates, the minimal privacy interests at stake here confirm that the requested records are not too "young" for disclosure.

Taken together, the Court finds that the relevant factors weigh in favor of unsealing President Nixon's grand jury testimony and the WSPF's associated materials, subject to NARA's review procedures. The special circumstances presented here—namely, undisputed historical interest in the requested records—far outweigh the need to maintain the secrecy of the records. The Court is confident that disclosure will greatly benefit the public and its understanding of Watergate without compromising the tradition and objectives of grand jury secrecy.

IV. **CONCLUSION**

For these reasons, it is hereby

ORDERED that petitioners' Petition for Order Directing Release of Transcript of Richard M. Nixon's Grand Jury Testimony of June 23–24, 1975, and Associated Materials of the Watergate Special Prosecution Force [1] is GRANTED. The requested records shall be unsealed subject to the review procedures of the National Archives and Records Administration.

**SO ORDERED**

Signed by Royce C. Lamberth, Chief Judge, on July 29, 2011.